[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM: MOTION TO DISMISS #200
The plaintiffs, Campion Ambulance Service, Inc. and Fitzgerald Ambulance Service, Inc., provide emergency medical services for the Waterbury area under a City contract. The defendant Medstar, Inc. ("Medstar") also provides such services for the Waterbury area and is a competitor of he plaintiffs. The other defendants are CAG Associates, Inc., Chris A. Gentile, Garrett F. Casey Jr., Raymond J. Manzelli, David J. Byrne and William R. Horrigan. Presently before the court is the defendants' motion to dismiss.
The following facts are not in dispute. This litigation arises from a 1989 administrative hearing before the Office of Emergency Medical Services ("OEMS"). The OEMS is an office established within the Department of Health Services ("DHS") pursuant to General Statutes § 19a-178 and is responsible for the regulation of emergency medical services statewide. Regs., Conn. State Agencies § 19a-179-1(w). That hearing, commenced on or about January 12, 1989, and continued over 15 separate dates until May 23, 1989, involved the plaintiffs' and Medstar's competing applications seeking designation as the "primary service area responder" ("PSAR") for the Waterbury area.[1] The designated hearing officer for this hearing was Attorney Christine B. Spak. The defendant Gentile, then in his position as CT Page 3860 director of OEMS, acted as technical advisor to Attorney Spak. On or about August 30, 1989, Gentile and the other individual defendants, all officers or stockholders of Medstar, formed the defendant corporation CAG Associates, Inc. On September 7, 1989, Gentile resigned his position with OEMS, effective October 5, 1989. On September 6, 1989, Gentile entered into an employment agreement with CAG Associates, Inc.
On September 5, 1989, Attorney Spak issued her proposed decision on the plaintiffs' and Medstar's PSA contract applications for the Waterbury area. On December 26, 1989, the Department of Health Services ("DHS") adopted the proposed decision as its final decision. That decision increased Medstar's service area for the Waterbury area to one-half (Area A), and reduced the plaintiffs' service area for the Waterbury area, which previously constituted two-thirds of the Waterbury area, to one-half (Area B). On January 30, 1990, the plaintiffs appealed the DHS final decision to the Superior Court, judicial district of Hartford/New Britain. On May 31, 1990, the court, Ripley, J.,
dismissed that appeal. Thereafter, on June 15, 1990, the plaintiffs filed an appeal of that decision with the Connecticut Appellate Court. The Connecticut Supreme Court transferred the appeal to itself and, on February 21, 1991, affirmed the judgment of the trial court.
In September of 1992, the plaintiffs filed with OEMS a motion entitled "Motion to Reopen and Reconsider and Petition to Revoke PSA Assignment and MIC-P License." ("Motion to Reopen"). This motion requested, inter alia, the OEMS to "reopen the hearing to consider newly discovered evidence concerning ex parte communications and business dealings between Chris A. Gentile (`Gentile'), the then Director of OEMS, and representatives of Medstar, Inc. (`Medstar')." Medstar filed an objection, dated October 1, 1992, to the plaintiffs' motion to reopen. The Commissioner of the Department of Public Health and Addiction Services denied this motion. The decision is undated and the file fails to indicate whether that agency held a hearing prior to its denial.
On September 5, 1992, the plaintiffs brought this action against the defendants, its complaint sounding in four counts: violations of the Connecticut Unfair Trade Practices Act, ("CUTPA"), General Statutes § 42-110a, et seq.; tortious interference with business expectancies; tortious interference with governmental process; and fraudulent nondisclosure. (Second CT Page 3861 Revised Complaint, dated May 19, 1993). The alleged facts supporting these claims are the same as those proffered by the plaintiffs in their motion to reopen, that Gentile illegally influenced the OEMS hearing officer's decision for the benefit of Medstar and that Gentile engaged in illegal ex parte communications with Medstar during the OEMS hearing. The plaintiffs make no request of the court to review the agency's denial of its motion to reopen. On November 8, 1995, McDonald,J., granted the defendants' motion for summary judgment as to the fraudulent nondisclosure and tortious interference with governmental process counts, but denied summary judgment as to the plaintiffs' CUTPA and tortious interference with business expectancy counts.
On September 10, 1996, four years into this litigation, Medstar filed a motion to dismiss the plaintiffs' complain . . . Medstar now claims that the court is without subject matter jurisdiction, as the plaintiffs failed to properly exhaust their administrative remedies by appealing OEMS' denial of their motion to reopen pursuant to General Statutes § 19a-178 et seq. and Section 19a-180-1 et seq. of the Regulations for Connecticut State Agencies. The defendants Casey, Manzelli, Byrne, Horrigan, Gentile and CAG Associates, Inc. all join in Medstar's motion.
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544,590 A.2d 914 (1991). "Subject matter jurisdiction is the power of the court to hear and determine cases of the general class to which the proceedings in question belong." Ambroise v. William RaveisReal Estate, Inc., 226 Conn. 757, 764-65, 628 A.2d 1303 (1993). "A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) Plasil v. Tableman, 223 Conn. 68, 80,612 A.2d 763 (1992). "The trial court lacks subject matter jurisdiction only if it has no competence to entertain the action before it." (Internal quotation marks omitted.) Amore v. Frankel,228 Conn. 358, 371, 636 A.2d 786 (1994). "Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Practice Book § 145. "A ruling on a motion to dismiss is neither a ruling on the merits CT Page 3862 of the action . . . nor a test of whether the complaint states a cause of action . . . . Motions to dismiss are granted solely on jurisdictional grounds." Malasky v. Metal Products Corp.,44 Conn. App. 446, 452, ___ A.2d ___ (1997).
The defendants argue that this court lacks subject matter jurisdiction because the plaintiffs "cannot forego their statutory right of appeal, and bring an independent action in Superior Court . . ." The defendants further argue that the plaintiffs' sole remedy is an appeal to the superior court pursuant to General Statutes § 19a-178 et seq., and §19a-180-1 et seq. of the Regulations for Connecticut State Agencies.
"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." Simko v. Ervin, 234 Conn. 498, 503, 661 A.2d 1018
(1995). "Because the exhaustion doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether that doctrine requires dismissal of the plaintiffs' claim." Concerned Citizens of Sterling v. Sterling,204 Conn. 551, 556, 529 A.2d 666 (1987). In applying the exhaustion doctrine, the court "must examine the complaint to determine whether [the plaintiff was] required to exhaust an administrative remedy before the Superior Court could entertain [this] action. Whether prior recourse to the agency will be required will depend on the injury alleged and the administrative remedy available." Maresca v. Ridgefield, 35 Conn. App. 769, 772,647 A.2d 751 (1994).
Although it is true that "[w]hen a party has a statutory right of appeal from the decision of an administrative officer or agency, he may not, instead of appealing, bring an independent action to test the very issue which the appeal was designed to test" Gelinas v. West Hartford, 225 Conn. 575, 595, 626 A.2d 259
(1993); it is equally true that "[t]here is no absolute right of appeal to the courts from a decision of an administrative agency." Fairfield v. Connecticut Siting Council, 238 Conn. 361,368, 679 A.2d 354 (1996); see also Summit Hydropower Partnershipv. Commissioner of Environmental Protection, 226 Conn. 792, 799,629 A.2d 367 (1993). Judicial review of administrative agency decisions is granted "only in certain limited and well delineated circumstances." Lewis v. Gaming Policy Board, 224 Conn. 693,699-700, 620 A.2d 780 (1993). CT Page 3863
General Statutes § 19a-180 (c) provides: "[a]ny person or emergency medical service organization aggrieved by an act or decision of the [OEMS] regarding certification of licensure may appeal in the manner provided by chapter 54." The appealability of an agency decision is governed by General Statutes § 4-183
(a), found in chapter 54, which provides that `"[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section."' (Emphasis in original.) Derwin v. State Employees Retirement Commission,234 Conn. 411, 418, 661 A.2d 1025 (1995). "Under § 4-166 (3), the term [f]inal decision' means (A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. The term does not include a preliminary or intermediate ruling or order of an agency, or a ruling of an agency granting or denying a petition for reconsideration."Fairfield v. Connecticut Siting Council, supra, 238 Conn. 369. "No statutory right to appeal exists `unless the commissioner was statutorily required to determine the plaintiff's legal right or privilege . . . in a hearing . . . .' If a hearing is not statutorily mandated, even if one is gratuitously held, a `contested case' is not created." (Citations omitted) Dadiskos v.Connecticut Real Estate Commission, 37 Conn. App. 777, 782,657 A.2d 717 (1995), quoting Summit Hydropower Partnership v.Commissioner of Environmental Protection, supra, 226 Conn. 802.
Pursuant to General Statutes § 19a-180 (a), the OEMS is required to hold a hearing upon a request for approval of permits for new or expanded emergency medical services to determine the necessity for such services. No statutory appeal process exists regarding the agency's denial of the plaintiffs' motion to reopen. If the plaintiffs had in fact framed their action as an appeal of said decision, the court would be obligated to dismiss this action. See Fairfield v. Connecticut Siting Council, supra,238 Conn. 373; Summit Hydropower Partnership v. Commissioner ofEnvironmental Protection, supra, 226 Conn. 799.
The plaintiffs are not seeking a review of OEMS' decision or a reversal of its decision. Rather, the plaintiffs seek damages for revenues lost and the diminution of the value of their business resulting from the reassignment of a portion of their PSAR service area to Medstar. As the plaintiffs correctly point out, even if OEMS were to reassign the PSAR back to the CT Page 3864 plaintiff, OEMS lacks the authority to compensate the plaintiffs for any losses incurred during the period while Medstar serviced its portion of the territory and derived the revenues therefrom. (Plaintiffs' Memorandum of Law, p. 10).
This is not an appeal from a decision of an administrative agency. The plaintiff is seeking monetary damages not a reversal of the decrease in its service area. The court does have jurisdiction of this matter. "The source of a court's jurisdiction is the constitutional and statutory provisions by which it is created . . . . The constitution of Connecticut, article fifth, § 1, as amended by article XX, § 1, of the amendments and General Statutes § 51-164s confer jurisdiction on the Superior Court for all causes of action." (Citations omitted; internal quotation marks omitted; emphasis in original.)Maresca v. Ridgefield, supra, 35 Conn. App. 774.
The court has subject matter jurisdiction to entertain the plaintiffs' cause of action for damages. The defendants' motion to dismiss is therefore denied.
PELLEGRINO, J.