[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 14294
These are consolidated appeals. In Docket No. 501816, the Town of Canterbury ("the town") appeals from a March 20, 2000 decision of the Department of Environmental Protection ("DEP") granting the town, subject to certain challenged conditions, permits to construct and operate a municipal solid waste transfer station on Packer Road in Canterbury. In Docket No. 501658, Packer Limited, LLC, Quinebaug Valley Regional Resources, LLC, Haul of Fame, Inc., Denis Yaworski, James Yaworski, II, Rose Yaworski, and Lee Yaworski, as intervenors in the town's permit proceeding, also appeal from the March 20, 2000 decision of DEP, as regards to conditions attached to the DEP approvals.
Yaworski had previously applied for permits to construct and operate a transfer station at the same site as the town's proposed facility. In a final decision issued December 23, 1994, then DEP commissioner, Timothy R.E. Keeney, denied Yaworski's application because of the history of environmental noncompliance by Yaworski. (Yaworski final decision No. 92015, December 23, 1994.)
Keeney found that the conduct of Yaworski "reflects a thoroughgoing disregard for legal requirements as well as for the welfare of the many individuals who live close to the [a]pplicant's existing solid waste facilities." He also found that granting the permits would subject those individuals to the risk of further adverse impacts if Yaworski continued to violate the law and "would make a mockery of [DEP's] solid waste regulatory program." (Final Decision p. 3.) Keeney also found that the residential neighborhood was an inappropriate location for the proposed transfer station then under consideration and the large volume of truck traffic it would involve.
Keeney's successor, Sidney J. Holbrook, denied a request for reconsideration filed by Yaworski (Yaworski Reconsideration Decision No. 92015, May 8, 1995.) The Keeney and Holbrook decisions were affirmed on appeal to the Superior Court. Yaworski, Inc. v. Department ofEnvironmental Protection, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 550682 (June 21, 1996,Maloney, J.) (17 Conn. L. Rptr. 39).
On November 1, 1996, the town submitted an application to the DEP bureau of waste management, pursuant to General Statutes § 22a-208a, seeking permits to construct and operate a municipal solid waste and bulky waste transfer station on this site, by way of a lease from Yaworski. (Return of Record ("ROR"), Item C, Exhibits, APP-I.) This application was deemed by the DEP to be sufficient on April 10, 1997. The CT Page 14295 staff of DEP prepared draft permits to construct and operate on August 13, 1997; the draft permit to operate was subsequently revised by the DEP on April 21, 1998 (ROR, Item C, Exhibits, DEP-16, DEP-17, DEP-17a.) On May 22, 1997, the DEP commissioner published a notice of a tentative determination to recommend issuance of the permits as drafted. (ROR, Item C, Exhibits, DEP-11.) Due to public interest, the commissioner issued a notice that a public hearing would be held on the application. (ROR, Item C, Exhibits, DEP-11.)
A hearing officer conducted public hearings on thirty-three days between August 18, 1997, and June 30, 1998. Prior to these hearings, the DEP commissioner had permitted citizens to intervene pursuant to General Statutes § 22a-19. (ROR, Item D, Docket File, Number 7.) On November 10, 1997, the hearing officer denied a petition for intervention by Yaworski. On January 30, 1998, he granted a motion for reconsideration and gave Yaworski intervenor status. (ROR, Item D, Docket File, Number 74.) The proposed final decision was issued on March 31, 1999, (ROR, Item A, Proposed Final Decision); an errata sheet inserting a new recommendation was issued on April 7, 1999. (ROR, Item D, Docket File, Number 195.)
The hearing officer concluded that if the town adhered to the terms and conditions of the draft permits to construct and operate, the proposed facility would be constructed and operated in accordance with all legal requirements. The hearing officer recommended that the permits be granted, but with three conditions. First, because of conditions at the adjacent Yaworski landfill, the proposed transfer station should not be allowed to operate until that landfill was closed pursuant to an approved closure plan, including the installation of an approved landfill gas collection system. Second, certain named individuals and businesses associated with the Yaworski landfill, and responsible for conditions at that landfill, should be excluded from managing the proposed facility. Finally, the town, prior to retaining any operator of the transfer station, should submit the name of the operator to the DEP commissioner for his review and written approval. (ROR. Item A. Proposed Final Decision, pp. 2, 39-40.)
The parties filed requests for oral argument and exceptions to the proposed final decision. The DEP commissioner appointed the director of the office of adjudications to render the final decision. After briefs and oral argument, on March 16, 2000, the director made findings of fact and conclusions of law, essentially approving the proposed final decision. (ROR, Item A, Final Decision, pp. 2-3.)
The town and Yaworski have each brought administrative appeals challenging as unconstitutional and illegal the three conditions placed CT Page 14296 upon the issuance of the permits to operate and construct the transfer station. After briefing and oral argument, the court raised sua sponte the issue of whether it has subject matter jurisdiction to hear the appeals. Further argument on the issue was held on October 10, 2001.
Judicial review of an agency decision is a creature of statute.Fairfield v. Connecticut Siting Council, 238 Conn. 361, 369 (1996). If the legislature has not created statutory authority for an appeal, then the Superior Court does not have jurisdiction to hear the appeal.Killingly v. Connecticut Siting Council, 220 Conn. 516, 522 (1991). The legislature has not authorized a right of appeal to the superior court from every determination of an administrative agency. New EnglandDairies, Inc. v. Commissioner Agriculture, 221 Conn. 422, 427 (1992). Judicial review of administrative agency decisions are granted only in certain delineated circumstances and an appeal is not as of right. Lewisv. Gaming Policy Board, 224 Conn. 693, 700 (1993).
Section 4-183(a) of the Uniform Administrative Procedure Act (UAPA) provides that one may appeal from the "final decision" of an administrative agency. The phrase "final decision" is expressly defined under the UAPA, General Statutes § 4-166(3)(A) to mean the "agency determination in a contested case." In General Statutes § 4-166(2), a contested case is defined as a "proceeding . . . in which the legal rights, duties or privileges of a party are required by statute to be determined by an agency after an opportunity for a hearing. . . ."
Referring to these definitions, the Appellate Court has stated: "No statutory right to appeal exists "unless the commission was statutorily required to determine the plaintiffs legal rights or privilege . . . in a hearing. . . . If a hearing is not statutorily mandated, even if one is gratuitously held, a "contested case' is not created." Dadiskos v.Connecticut Real Estate Commission, 37 Conn. App. 777, 781 (1995), quoting Summit Hydropower Partnership v. Commissioner of EnvironmentalProtection, 226 Conn. 792, 802, 807-809 (1993).[1] See also Ahern v.State Employees Retirement Commission, 48 Conn. App. 482, 488, cert. denied, 245 Conn. 911 (1998) (Lavery, J. concurring)("The statutes governing the state employees retirement commission . . . do not require that a hearing be held to determine a party's legal rights or privileges. Therefore, in any matter brought before this agency, it appears that there can never be a "contested case' as defined in §4-166(2).") (Emphasis added).
In light of this precedent, the court's subject matter jurisdiction depends upon whether the DEP hearing in this case was statutorily mandated. Pursuant to General Statutes § 22a-208a(b), "[n]o solid waste facility shall be built or established . . until the plan, design CT Page 14297 and method of operation of such facility have been filed with the [DEP]. . . ." A solid waste facility is defined in § 22a-207(4) to include, among other things, a "transfer station" and a "solid waste disposal area." As regards a hearing, § 22a-208a(e) provides:
 The commissioner may hold a public hearing prior to approving or denying an application if in his discretion the public interest will be best served thereby, and shall hold a hearing upon receipt of a petition signed by at least twenty-five persons. The commissioner may amend a permit to construct or to operate, without hearing, for minor changes in facility design. practices or equipment that would not in his judgment significantly change the nature of the facility or its impact on the environment. Notwithstanding the provisions of this subsection, the commissioner shall conduct a public hearing on an application for a permit to construct a new solid waste disposal area. Such public hearing shall be commenced in the municipality in which the facility is to be located or a location in close proximity to said municipality. Notwithstanding the provisions of this subsection, if a hearing has been held on and after July 1, 1993, on an application for a permit to construct or alter a solid waste facility, the commissioner shall not hold a hearing on an application for a permit to operate such facility.[2]
This subsection was essentially adopted by the legislature in this form in 1991. In the course of the debate in the House of Representatives,[3]
the proponent of the legislation, Representative Mushinsky, described the hearing backlog at the DEP. "We would like to limit these unnecessary hearings to those that can be really threatening the environment, or to those activities in which there is a great public interest, or at least 25 people are interested, or a landfill creation or expansion. We don't see the point of having public hearings at which the public is not interested" 34 H.R. Proc., Pt. 10, 1991 Sess., p. 3728.
Representative Farr noted that, unlike the prior statute, a hearing was not always required on an application to construct a solid waste facility. "We're now going from solid waste landfill disposal facilities and talking about new solid waste disposal areas. What that means is that at the present time if you have a transfer station and somebody wants to build a transfer station, that is defined as a facility. A transfer station, however, is not a disposal area. So what we're really saying with this amendment is there is not an automatic hearing every time CT Page 14298 somebody wants to build a transfer station. The automatic hearing only occurs when somebody wants to build an actual landfill." 34 H.R. Proc., Pt. 10, 1991 Sess., p. 3730.[4]
Both the statutory language and the legislative history thus indicate that with regard to an application to construct a transfer station, the DEP commissioner has the discretion to hold a public hearing if "the public interest will be best served thereby." The commissioner "shall hold a hearing upon receipt of a petition signed by at least twenty-five persons.
Here, the record is clear that on May 22, 1997, Richard J. Barlow, chief of the DEP waste management bureau, wrote to the town's first selectman, Neil Dupont, that "[d]ue to significant public interest the Commissioner has decided to hold a public hearing on the Town of Canterbury's application. " (Emphasis added). (ROR, Item C, Exhibits, DEP-11.) This document was relied upon by the hearing officer in the proposed final decision for a justification to hold the public hearing, (ROR, Item A, Proposed Final Decision, p. 4) and the director of the office of adjudications in rendering her final decision, (ROR, Item A, Final Decision, p. 4.) Also in the record is a notice of public hearing to be conducted on various dates commencing on August 18, 1997, issued by Richard J. Barlow, published on June 9, 1997, (ROR, Item C, Exhibits, App-24), and a notice of public hearing, signed by David S. Knishkowy of the office of adjudications of DEP, and dated May 20, 1997. (ROR, Item D, Docket File, Number 9.)
The record is also clear that the reason the hearing was held was not because the commissioner was in "receipt of a petition signed by at least twenty-five persons."[5] While there was such a petition signed by forty-one persons offered by the town, it was circulated by one Luther Thurlow on November 10, 1997, three months after the hearing commenced in this matter. (ROR, Item C, Exhibits, App-40 (Identification only)). The town attempted to introduce the petition at the continued public hearing on February 9, 1998. The hearing officer refused to admit the document in evidence over the objection of the DEP and the citizen intervenors. The witness on the stand, the first selectman of the town, stated that he did not know the circumstances of the circulation of the petition, and was only asked to bring it to the hearing. There was no showing that the DEP commissioner had ever seen the document. Indeed, the hearing officer stated that the only reason for the hearing was the commissioner's declaration that a hearing would be in the public interest. The attorney general was concerned over the notice of the August 18, 1997 hearing if the petition were allowed to govern the right to a hearing. At the conclusion of the town's offer of evidence, the petition sheets were marked for identification, while the town reserved the right to revisit CT Page 14299 the issue to admit the petition as a full exhibit. This was never done.[6] (ROR, Item B, Transcripts, February 9, 1998, pp. 19-27.)[7]
At the hearing on this matter held on October 10, 2001, the town and Yaworski advanced additional arguments about the effect of Exhibit 40 (for Identification). The court allowed the town's first selectman to testify that prior to announcement of the hearing by the DEP, he had spoken to the commissioner. The first selectman was assured by the commissioner that there had been a favorable tentative determination, but that it was likely that a petition for a hearing would be filed. Since the first selectman expressed an interest in expediting the proceedings, the commissioner recommended that he commence the hearing under the discretionary provisions, rather than waiting for a petition. The town argues that this means that the hearing became mandatory when Exhibit 40 was brought to the hearing, six months later.
The court disagrees that the commissioner's awareness that a petition would be forthcoming may substitute for his receipt of a properly-completed petition with the requisite number of signatures. The first selectman's testimony actually shows that the town was more interested in a speedy resolution than insuring that the hearing was held under the mandatory provisions.
Yaworski argues first that the tentative marking for identification of Exhibit 40 by the hearing officer converted the proceeding from a gratuitous hearing to a mandatory one. According to Yaworski, because "the commissioner may hold a public hearing prior to approving or denying an application," § 22a-208a (e), the petition to mandate a hearing may be filed with the commissioner or his designee at any time, even the day before the commissioner makes his ultimate decision.
The court reads § 22a-208a (e) differently. The commissioner may, in his discretion, hold a hearing on a transfer station prior to rendering a decision. As the legislative history quoted above indicates, this discretion was given to expedite the work of the agency, and so that hearings on transfer stations would be held only in important instances and not needlessly. The petition option, with a purpose separate from the commissioner's discretionary powers, was placed in the statute to protect the public if the commissioner too hastily refused a hearing. Similarly, were the commissioner to delay decision on a hearing, the petition option would be available to compel a hearing. It was to act as a "trigger." 34 H.R. Proc., Pt. 10, 1991 Sess., p. 3736 (Rep. Mushinsky).
In addition, the regulations of the DEP support the proposition that the petition was to be filed early in the proceedings, and could not be filed at any time. Under Reg. § 22a-3a-6 (i)(2): "Whenever any CT Page 14300 statute . . . provides for the filing of a request for a hearing concerning the Commissioner's disposition of an application, the request shall he filed with the Office of Adjudications within the time prescribed by the applicable statute . . . and if not prescribed therein, within thirty days of the Commissioner's action. "[8] Here, the DEP commissioner had made a tentative determination on May 22, 1997 and set a public hearing because of public interest. (ROR, Item C, Exhibits, DEP-11.) On August 13, 1997, the DEP issued a Draft Permit to Operate containing the challenged restrictions. (ROR, Item C, Exhibits, DEP-17.) Exhibit 40 was not tendered to the hearing officer until the hearing of February 9, 1998. This certainly exceeded the thirty-day period for submitting a petition for a hearing, running from an action by the DEP. The DEP rule of practice does not contemplate that a gratuitous hearing may be converted" into a mandatory one by the filing of a petition for a hearing beyond the thirty-day period of the rule.
Finally, Lee Yaworski, one of the plaintiffs, contends that his rights would be violated if he was required to request a hearing within thirty days of the commissioner's actions. He claims to have been unaware of the conditions in the permit to operate that would restrict his certificate to operate a landfill until the proposed final decision was rendered in March, 1999. The record does not support a finding that Lee Yaworski was unaware of the permit conditions in August, 1997. He was the secretary of Haul of Fame, (ROR, Item C, Exhibits, DEP-39), as well as conservator for his father, a director, secretary and treasurer of Yaworski, Inc. (ROR, Item C, Exhibits, DEP-50.)
Both the proposed final decision and the final decision indicate that Lee Yaworski participated in the management and control of the Yaworski landfill, including "communicating with DEP staff regarding conditions at the landfill and conducting site inspections of the landfill with DEP staff." (ROR, Item A, Proposed Final Decision, p. 17; Final Decision, p. 15.) The court finds that there is sufficient evidence in the record to support these findings. (ROR, Item B, Transcripts, June 17, 1998, pp. 82, 96, 102, 103, 105, 113, 122, 131, 134.) As DEP employee Robert LaFrance testified, if Denis Yaworski was not available, he would contact Lee. (ROR, Item B, Transcripts, June 17, 1998, p. 146.)[9]
Lee Yaworski knew, as did all Yaworski individuals and entities, that there had been a tentative determination in May 1997 and a draft permit to operate with conditions in August 1997, and yet no petition for a hearing was timely filed. See Kish v. Cohn, 59 Conn. App. 236, 240
(2000): "The plaintiffs were fully aware of the events taking place between the defendants and the department regarding the dam. Nevertheless, the plaintiffs did not attempt to trigger a hearing under § 22a-403 by collecting the signatures of twenty-five persons as CT Page 14301 required by the statute. Completing such a task, although presumably not the plaintiffs' ideal choice, is not an onerous requirement."
The court concludes that the hearing in this case was not conducted under the mandatory provision of § 22a-208a (e), but under the discretionary provision of the subsection. Under the precedent discussed above, there is no "contested case" under § 4-166 (2) and thus no final decision under § 4-166(3)(A). No appeal may be taken, therefore, under § 4-183(a).
This result agrees with Judge Satter's decision in Organized NorthEasterners v. Capital City Economic Development Authority, Superior Court, judicial district of Hartford, Docket No. 806228 (June 7, 2001,Satter, J.T.R.). Reviewing identical language to § 22a-208a(e) in the Adriaen's Lauding legislation and a further regulation issued by the DEP,[10] he concludes: "Since the evidence in this case does not show that such petition was filed, the regulatory provision for holding the hearing is permissive. Nor does the regulation require the Commissioner to determine the rights or privileges of anyone in the hearing. Consequently, it does not elevate the approval of the Remediation Action Plan to the status of a contested case. Thus, plaintiff has failed to connect its claims of aggrievement to a case it has a right to appeal under § 4-183."
Because there is no contested case here and the court thus lacks subject matter jurisdiction, the appeal is dismissed.[11]
Henry S. Cohn, Judge