JOHN T. DERWIN *v.* STATE EMPLOYEES
RETIREMENT COMMISSION
(14980)

PETERS, C. J., and BERDON, NORCOTT, KATZ and PALMER, Js.

Argued January 3—decision released July 25, 1995

*Thomas P. Clifford III*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Charles A. Overend*, assistant attorney general, for the appellant (defendant).

*Gary R. Kevorkian*, for the appellee (plaintiff).

PALMER, J. This case requires us to determine whether the decision of an administrative agency after reconsideration is appealable under the Uniform Administrative Procedure Act (UAPA)[1] even though the agency decision prior to reconsideration was itself not final for purposes of appeal. The plaintiff, John T. Derwin, sought certain additional retirement benefits from the defendant, the state employees retirement commission (commission), under General Statutes §§ 5-173 and 5-192b.[2] The commission denied the plain-

---

[1] General Statutes §§ 4-166 through 4-189.

[2] General Statutes § 5-173 provides in relevant part: "STATE POLICE; CORRECTIONAL INSTITUTION GUARDS AND INSTRUCTORS; EMPLOYEES AT WHIT-

tiff's request and, after granting the plaintiff's application for reconsideration, affirmed its original

ING FORENSIC INSTITUTE; HAZARDOUS DUTY MEMBERS OF TIER I. RETIRE-
MENT OF COMMISSIONER OR DEPUTY COMMISSIONER OF PUBLIC SAFETY
BEFORE FORTY-SEVENTH BIRTHDAY. (a) A state policeman in the active service of the division of state police within the department of public safety, or any person who is engaged in guard or instructional duties at the Connecticut Correctional Institution, Somers, the Connecticut Correctional Institution, Enfield-Medium, the Carl Robinson Correctional Institution, Enfield, the John R. Manson Youth Institution, Cheshire, the Connecticut Correctional Institution, Niantic, the Connecticut Correctional Center, Cheshire and the community correctional centers, or any person exempt from collective bargaining who is engaged in custodial or instructional duties within the department of correction, or any person who is an employee of the Whiting Forensic Institute with direct and substantial patient contact, or any member of tier I who has been designated as a hazardous duty member pursuant to an applicable collective bargaining agreement, who has reached his forty-seventh birthday and completed at least twenty years of hazardous duty service for the state or service as a state policeman or as guard or instructor at said correctional institutions or correctional centers, or service in a custodial or instructional position within the department of correction which is exempt from collective bargaining, or as an employee of the Whiting Forensic Institute or its predecessor institutions, shall be retired on his own application or on the application of the commissioner of public safety or the commissioner of correction, as the case may be.

"(b) On or after October 1, 1982, each such person shall receive a monthly retirement income equal to one-twelfth of (1) fifty per cent of his base salary, as defined in subsection (b) of section 5-162, for such twenty years of service, plus (2) two per cent of his base salary for each year, taken to completed months, of Connecticut state service in excess of twenty years, except that any such person who is both a member of the division of state police within the department of public safety and a member of part B shall receive a permanently reduced retirement income upon reaching the age of sixty-five or, if earlier, upon receipt of Social Security disability benefits or, for any such state policeman, upon receipt of benefits under subsection (d) of section 5-142. Any such state police member shall have his monthly retirement income reduced by an amount equal to one-twelfth of one per cent of four thousand eight hundred dollars multiplied by the number of years of state service, taken to completed months.

\* \* \*

"(f) A member who has completed twenty years of hazardous duty service under this section, but who leaves such service on or after October 1, 1982, but prior to reaching his forty-seventh birthday shall, upon his own application be entitled to the benefits provided in subsection (b) of this section at any time after reaching his forty-seventh birthday.

decision. The plaintiff appealed from the decision of the commission after reconsideration to the Superior Court,

"(g) On and after October 1, 1982, an employee who has met the twenty-year minimum service requirement and is thus eligible for benefits under this section shall have any other Connecticut state employment recognized in calculating the amount of his benefits."

General Statutes § 5-192b provides: "CREDIT FOR PREVIOUS MEMBERSHIP IN A MUNICIPAL RETIREMENT SYSTEM. (a) Any person who became a member of the state employees retirement system and who previously was a member of the Connecticut municipal employees' retirement system shall receive credit for the purpose of retirement under the provisions of this chapter for the period of his service with such municipality, provided there shall be transferred to the State Employees Retirement Fund from the Connecticut Municipal Employees' Retirement Fund, on application of a state employee who is a member of tier I, the entire amount paid into the Connecticut Municipal Employees' Retirement Fund by the employee as a result of the service of such employee, plus interest at the rate being paid by the Connecticut Municipal Employees' Retirement Fund from which such amount is transferred from the date of each payment into such fund to the date such employee became a member of the state employees retirement system, such amount to be computed by the State Retirement Commission. No transfer of municipal employee contributions and interest shall be required whenever a member of the tier II plan applies for such retirement credit.

"(b) On or before the first of the month following three months after June 28, 1985, any member of the tier I plan in the state employees retirement system who was previously a member of the Connecticut municipal employees' retirement system and who, pursuant to the terms of section 7-440, withdrew all his contributions in the Municipal Employees' Retirement Fund upon leaving municipal employment shall be credited, for retirement purposes under this chapter, with such period of prior municipal service upon payment into the State Employees Retirement Fund of an amount equal to the total of all contributions refunded to him from the Municipal Employees' Retirement Fund plus five per cent interest on such contributions from the effective date of his withdrawal from the municipal fund to the date of his application for credit under this subsection. Such municipal service shall be considered to be active state service for the purposes of this chapter.

"(c) Any member of the state employees retirement system who has prior service in a municipality, or a department of a municipality, which has not accepted the provisions of part II of chapter 113 shall receive credit for the purpose of retirement under the provisions of this chapter for the period of such service, or any portion thereof, if he complies with the requirements of either subdivision (1) or subdivision (2) of this subsection. (1) Such member may purchase credit for such service upon payment to the State Employees Retirement Fund of either two or five per cent, as appropriate, of his

which sustained his appeal. The commission appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The facts relevant to this appeal are not in dispute. The plaintiff was continuously employed by the state of Connecticut from April, 1970, until his retirement in May, 1990, serving first as a correctional officer and then as a state police officer.[3] Because the plaintiff had accumulated over twenty years of hazardous duty service, he was entitled to hazardous duty retirement benefits pursuant to § 5-173.[4]

---

municipal salary for the period of such service, plus an amount determined by the Retirement Commission as necessary to fund the increased benefits payable by reason of such purchase with interest at the rate of six and one-half per cent, compounded annually, on such payment. (2) Such member may obtain credit for such service upon transfer of the entire amount paid into a municipal retirement fund by the member and the municipality during the period of such service including any earned interest, and payment of an amount determined by the retirement commission as necessary to fund the increased benefits payable by reason of such credit, to the State Employees Retirement Fund. Where required by a municipal ordinance or charter provision, the comptroller may enter into a reciprocal agreement with a municipality in order to effect a transfer of funds under this subdivision. No credit shall be granted under this subsection for any period of service for which a retirement benefit is being paid by any governmental unit or where such grant would result in multiple service credit for the same period of service."

[3] The plaintiff served as a correctional officer in the state department of correction from April 14, 1970, to November 29, 1981, and as a state police officer in the division of state police from November 30, 1981, until his retirement on May 31, 1990. Both positions qualify as hazardous duty service.

[4] Under § 5-173, the plaintiff was eligible to retire on his forty-seventh birthday with a monthly retirement income equal to one-twelfth of (1) 50 percent of his base salary, as defined by General Statutes § 5-162 (b), for his twenty years of hazardous duty service, plus (2) 2 percent of his base salary for each year of Connecticut state service in excess of twenty years. See footnote 2.

Prior to his state service, the plaintiff had been employed as a police officer by the town of Windsor Locks from April, 1967, to April, 1970. During the period of his municipal service, the plaintiff had been a member of the municipal employees retirement system and had contributed to the municipal employees' retirement fund.[5] Because his membership in the municipal retirement system terminated upon his resignation from the Windsor Locks police department, the plaintiff petitioned the commission to transfer his municipal retirement funds to the state retirement system. See footnote 2. The commission granted the plaintiff's request on February 29, 1972.

Upon his state retirement, the plaintiff applied for and received hazardous duty retirement benefits under § 5-173. The commission, however, declined to include the plaintiff's municipal service in its calculation of the plaintiff's retirement benefits. On July 5, 1990, the plaintiff filed a claim with the commission under General Statutes § 5-155a (j)[6] seeking credit for his municipal service in the determination of his hazardous duty retirement benefits. The commission granted the plaintiff a hearing on his claim pursuant to § 5-155a (g)[7] and, on August 20, 1992, denied his request for additional hazardous duty retirement credit. The commission also voted to refund to the plaintiff all moneys that he had paid into the municipal retirement fund, with five per-

[5] See General Statutes §§ 7-425 through 7-459a.

[6] General Statutes § 5-155a (j) provides: "CLAIMS PROCEDURE. Any claim for a pension or any other benefit which may become available in accordance with the provisions of this chapter may be submitted to the commission provided it is submitted in writing. Any such claim will be reviewed and decided by the commission. The claimant shall be advised of the processing status of his claim upon reasonable request."

[7] General Statutes § 5-155a (g) provides: "HEARINGS. The commission may hold hearings when deemed necessary in the performance of its duty. The hearings shall be governed by rules and regulations of the commission and the commission shall not be bound by technical rules of evidence."

cent annual interest from the date on which those payments were transferred from the municipal retirement fund to the state retirement fund. The plaintiff thereafter sought reconsideration of the commission's decision under § 5-155a (k).[8] The commission granted the plaintiff's request for reconsideration and, after a hearing, affirmed its original decision denying the plaintiff's claim.

The plaintiff appealed from the decision of the commission to the Superior Court under General Statutes § 4-183 (a),[9] claiming that the commission improperly had failed to include his years of municipal service in its calculation of his hazardous duty retirement benefits. The commission filed a motion to dismiss the plaintiff's appeal on the ground that the trial court lacked subject matter jurisdiction over it. The trial court, on March 3, 1993, denied the commission's motion to dismiss. On August 4, 1993, the commission sought reconsideration of its motion to dismiss, citing this court's decision in *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, 226 Conn. 792, 629 A.2d 367 (1993), which had been released on August 3, 1993. After denying the commission's motion for reconsideration, the trial court sustained the plaintiff's appeal and remanded the case to the commission for a recalculation of the plaintiff's retirement benefits to include credit for his prior municipal service. This appeal followed.

---

[8] General Statutes (Rev. to 1993) § 5-155a (k) provides: "CLAIMS REVIEW AND APPEAL PROCEDURE. If any claim is denied, a claimant may request that the decision be reviewed and reconsidered by the commission. Thereafter, any contested case shall be decided in accordance with chapter 54."

[9] General Statutes § 4-183 provides in relevant part: "APPEAL TO SUPERIOR COURT. (a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the superior court as provided in this section. The filing of a petition for reconsideration is not a prerequisite to the filing of such an appeal."

The commission claims that the trial court lacked jurisdiction over the plaintiff's appeal because the commission's decision upon reconsideration was not a "final decision" for purposes of the UAPA. The plaintiff maintains that the commission's denial of his claim after reconsideration *was* an appealable final decision under the UAPA and, further, that the trial court properly determined that he was entitled to credit for his prior municipal service in the calculation of his hazardous duty retirement benefits. We conclude that the decision of the commission after reconsideration was not a final decision and, accordingly, that the trial court lacked subject matter jurisdiction over the plaintiff's appeal.[10]

The appealability of an agency decision is governed by § 4-183 (a) of the UAPA, which provides that "[a] person who has exhausted all administrative remedies available within the agency and who is aggrieved by a *final decision* may appeal to the superior court as provided in this section." (Emphasis added.) Accordingly, we have consistently held that the Superior Court has jurisdiction only over appeals from a "final decision" of an administrative agency. See, e.g., *State* v. *State Employees' Review Board*, 231 Conn. 391, 400 n.13, 650 A.2d 158 (1994); *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 811–12. Under General Statutes § 4-166 (3), " '[f]inal decision' means (A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration. . . ."[11]

---

[10] We do not, therefore, reach the merits of the plaintiff's appeal.

[11] Under § 4-166 (3), a "[final decision] . . . does not include a preliminary or intermediate ruling or order of an agency . . . ." Because the commission's denial of the plaintiff's initial request for hazardous duty retirement credit definitively resolved the plaintiff's claim, its decision was not a preliminary or intermediate ruling or order. See *State* v. *State Employees' Review Board*, supra, 231 Conn. 403–404.

The plaintiff claims that the trial court correctly concluded that it had jurisdiction over the plaintiff's appeal because the commission's denial of his request constituted "an agency decision made after reconsideration" within the meaning of § 4-166 (3) (C).[12] In the plaintiff's view, the language of § 4-166 (3) (C) is clear on its face and, consequently, we need look no further than the words of the statute to determine its meaning. The commission, on the other hand, contends that § 4-166 (3) (C), when read in context, cannot be interpreted literally to include all agency decisions made after reconsideration but, rather, must be construed to apply only to those agency decisions that were "final decisions" before reconsideration because they were made in contested cases. We agree with the commission.

---

[12] Although the plaintiff concedes that the commission's decision was not a declaratory ruling under § 4-166 (3) (B), he also claims, without elaboration, that the commission's ruling prior to reconsideration was a decision in a "contested case" under § 4-166 (3) (A). As we have recently stated, however, a "contested case" is a case in which an "agency is *required by statute* to provide an opportunity for a hearing to determine a party's legal rights or privileges." (Emphasis added.) *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection,* supra, 226 Conn. 811; see also General Statutes § 4-166 (2) (definition of "contested case"). The plaintiff's right to a hearing on his request for additional retirement credit was governed by § 5-155a (g), which provides that "[t]he commission *may* hold hearings when deemed necessary in the performance of its duty." (Emphasis added.) See footnote 7. "To conclude that [§ 5-155a (g)] mandates that the [commission] make a . . . determination in a hearing or after an opportunity for a hearing would confuse '[may]' with 'must' and would establish by judicial fiat a statutory requirement that the legislature did not in fact create." *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection,* supra, 805. Because the hearing was not statutorily mandated, the fact that the commission actually held a hearing on the plaintiff's claim does not convert his case into a "contested case" under § 4-166 (2). Id., 811. Furthermore, since the commission was not statutorily required to conduct a hearing in connection with the plaintiff's request for reconsideration under § 5-155a (k); see footnote 8; the commission's decision after reconsideration likewise was not a "determination in a contested case" under § 4-166 (3) (A).

Because our fundamental objective in construing a statute " 'is to ascertain and give effect to the apparent intent of the legislature' "; *Fleming* v. *Garnett*, 231 Conn. 77, 91–92, 646 A.2d 1308 (1994); *State* v. *Metz*, 230 Conn. 400, 409, 645 A.2d 965 (1994); we will not undertake an examination of § 4-166 (3) (C) "with blinders on regarding what the legislature intended [it] to mean." *Frillici* v. *Westport*, 231 Conn. 418, 431, 650 A.2d 557 (1994). Accordingly, our analysis of § 4-166 (3) (C) is not limited solely to the words of the statute. Instead, we must also "look . . . to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." *State* v. *Metz*, supra, 409; *Fleming* v. *Garnett*, supra, 92.

Furthermore, we are guided by the principle that "the legislature is always presumed to have created a harmonious and consistent body of law . . . ." *Daly* v. *DelPonte*, 225 Conn. 499, 510, 624 A.2d 876 (1993); see also *Simms* v. *Warden*, 229 Conn. 178, 187–88, 640 A.2d 601 (1994). Indeed, this tenet of statutory construction, which requires us to "read statutes together when they relate to the same subject matter"; *Simms* v. *Warden,* supra, 188; has special applicability here because the " 'main objective [of the UAPA is] uniform procedure.' " *Commission on Human Rights & Opportunities* v. *Windsor Hall Rest Home*, 232 Conn. 181, 189, 653 A.2d 181 (1995), quoting *Hirschfeld* v. *Commission on Claims*, 172 Conn. 603, 607–608, 376 A.2d 71 (1977).

In determining the proper scope of § 4-166 (3) (C), we look first to General Statutes § 4-181a,[13] which

---

[13] General Statutes § 4-181a provides: "CONTESTED CASES. RECONSIDERATION. MODIFICATION. (a) (1) Unless otherwise provided by law, a party in

governs the reconsideration of agency decisions pursuant to the UAPA. Under § 4-181a (a) (1), an agency is authorized to reconsider only final decisions in contested cases. Thus, an agency decision is subject to reconsideration under the UAPA only if the decision already is a final decision for purposes of appeal. The plaintiff, however, urges an interpretation of § 4-166 (3) (C) that would convert a nonfinal decision for purposes of appeal into an appealable final decision, a construction that is inconsistent with the dictates of § 4-181a. Absent a clear legislative mandate to do so, we will not con-

a contested case may, within fifteen days after the personal delivery or mailing of the final decision, file with the agency a petition for reconsideration of the decision on the ground that: (A) An error of fact or law should be corrected; (B) new evidence has been discovered which materially affects the merits of the case and which for good reasons was not presented in the agency proceeding; or (C) other good cause for reconsideration has been shown. Within twenty-five days of the filing of the petition, the agency shall decide whether to reconsider the final decision. The failure of the agency to make that determination within twenty-five days of such filing shall constitute a denial of the petition. (2) Within forty days of the personal delivery or mailing of the final decision, the agency, regardless of whether a petition for reconsideration has been filed, may decide to reconsider the final decision. (3) If the agency decides to reconsider a final decision, pursuant to subdivision (1) or (2) of this subsection, the agency shall proceed in a reasonable time to conduct such additional proceedings as may be necessary to render a decision modifying, affirming, or reversing the final decision.

"(b) On a showing of changed conditions, the agency may reverse or modify the final decision, at any time, at the request of any person or on the agency's own motion. The procedure set forth in this chapter for contested cases shall be applicable to any proceeding in which such reversal or modification of any final decision is to be considered. The party or parties who were the subject of the original final decision, or their successors, if known, and intervenors in the original contested case, shall be notified of the proceeding and shall be given the opportunity to participate in the proceeding. Any decision to reverse or modify a final decision shall make provision for the rights or privileges of any person who has been shown to have relied on such final decision.

"(c) The agency may, without further proceedings, modify a final decision to correct any clerical error. A person may appeal that modification under the provisions of section 4-183 or, if an appeal is pending when the modification is made, may amend the appeal."

strue § 4-166 (3) (C) so as to render it incompatible with another provision of the same statutory scheme.

No such mandate can be found in the pertinent legislative history. On the contrary, that history squarely supports the conclusion that § 4-166 (3) (C) applies only to those agency determinations that are subject to reconsideration under § 4-181a, namely, final decisions in contested cases. In 1988, the legislature undertook " 'a comprehensive revision of the UAPA, based upon recommendations made after nearly three years of study and review by the Connecticut law [revision] commission.' " *Glastonbury Volunteer Ambulance Assn., Inc.* v. *Freedom of Information Commission*, 227 Conn. 848, 853, 633 A.2d 305 (1993). Among other amendments to the UAPA, the legislature expressly authorized the reconsideration of final agency decisions in contested cases under § 4-181a and, in addition, defined "final decision" under § 4-166 (3) to include in subsection (C), "an agency decision made after reconsideration." Public Acts 1988, No. 88-317, §§ 1, 107. In its report to the General Assembly regarding the proposed changes to the UAPA, the law revision commission explained that "[§ 4-181a] . . . set[s] detailed standards for *reconsideration of final decisions* . . . . A petition for reconsideration is not a prerequisite for seeking judicial review [under § 4-183 (a)] and does not stay the time to appeal. If, however, the reconsideration petition is granted, the agency's subsequent action affirming, modifying, or reversing the *final decision* is, under [§ 4-166 (3)], a *new final decision* to which a new appeal period applies." (Emphasis added.) 1987 13th Annual Report of the Connecticut Law Revision Commission to the General Assembly, March, 1988, p. 38. As understood by its drafters, therefore, § 4-166 (3) (C) was not intended to create a new category of appealable decisions for noncontested cases but, rather, to clarify that a party in a contested case may appeal *either* from a final decision of an

agency under § 4-166 (3) (A) *or* from an agency decision rendered after reconsideration pursuant to § 4-181a.

These conclusions were echoed during the public hearings on the proposed changes to the UAPA before the Joint Standing Committee on the Judiciary. For example, Stephen F. Frazzini, the executive director of the Hartford County Legal Aid Society and a member of the advisory group that had worked with the law revision commission on the proposed revision to the UAPA, testified as follows: "The final thing that [the bill] does is, that I'd like to call your attention [to also involves] the appeal process. Let's say that you are dissatisfied with an agency decision, that you think you can get the agency to change its mind because it's overlooked a point. You ask for reconsideration. [Case] law allow[s] you to ask for reconsideration, but it doesn't make clear what the standards are . . . what standards of the agency should apply or many of the procedures related to consideration. We realize[d] that that was true and we tried to set up some standards in the act for *how an agency reconsiders its decision once it's issued a final decision, and how . . . appeals [will then be taken] from that decision* if you still don't like the reconsidered decision." (Emphasis added.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 1, 1988 Sess., p. 265. Similarly, during the floor debate on No. 88-317 of the 1988 Public Acts in the House of Representatives, Representative Martin M. Looney, a proponent of the legislation, remarked that the act "clarifies when *a final decision can be reconsidered* or modified [under the UAPA] . . . ." (Emphasis added.) 31 H.R. Proc., Pt. 21, 1988 Sess., p. 7321. In view of these comments, it is apparent that the proponents of the proposed legislation did not intend for § 4-166 (3) (C) to convert a nonfinal decision for purposes of appeal into an appealable final decision.[14]

---

[14] As we have previously noted in a similar context, the plaintiff's construction would tend to discourage an agency from granting a petition for

When read in the proper statutory and historical context, § 4-166 (3) (C) may fairly be construed only to include decisions after reconsideration in contested cases. Because the commission's denial of additional retirement benefits was not a final decision in a contested case, the trial court lacked jurisdiction over the plaintiff's appeal.

The judgment is reversed and the case is remanded with direction to dismiss the plaintiff's appeal.

In this opinion the other justices concurred.

reconsideration because such review would spawn a final decision under § 4-166 (3), thereby enabling the aggrieved party to appeal an otherwise nonappealable agency decision. See *Summit Hydropower Partnership* v. *Commissioner of Environmental Protection*, supra, 226 Conn. 808.