[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 6694
This is an appeal by the defendant Zoning Board of Appeals of the Town of Plainfield (hereinafter ZBA) and its members individually, from a decision of the Freedom of Information Commission (hereinafter FOIC), nullifying the granting of a variance by the defendant ZBA.
The facts are as follows. In September of 1997, James Gallow, a board member, applied to the ZBA for a variance from Section 3.21j of the Piainfieid Zoning Regulations in order to be allowed to park certain vehicles on his premises. The application came before the ZBA for public hearing and deliberation on November 5, 1997. At that meeting the ZBA voted 3 to 1 to approve the variance, Gallow not participating in the deliberations. That vote was legally inadequate because Connecticut General Statutes § 8-7 provides that the concurring vote of four members of a zoning board of appeals is necessary to grant a variance. The legal notice of the board's action, published in the local newspaper, reported that the Gallow application had been denied. This surprised the members of the board who had voted in favor of the application. The agenda of the next meeting of he ZBA for December 2, 1997, noticed in accordance with statutory requirements, included an item, "3. Review and Act on Minutes of November 5, 1997". At that meeting a member proposed "that they reconsider the variance because all members in attendance last month did not vote." That member then moved to grant the Gallow application for a variance for the reasons given at the prior hearing. The motion was seconded and the members voted 4 to 1 in favor of the application.
Defendants Roland and Frances Jernstrom, who had opposed the application for the variance at the November board meeting, did not appeal to the Superior Court the ZBA December decision granting the variance, but filed a complaint with the FOIC claiming violation of the Freedom of information Act. A hearing was held before hearing officer Clifton A. Leonhardt. In his decision, hearing officer Leonhardt made the following findings of fact:
 8. It is found that the agenda posted for the December 2, 1997 meeting included an item to "review and act on minutes of November 5, 1997" meeting, but did not include any item for action to approve the variance application of respondent Gallow. It is also found that the complainant Frances Jernstrom would have attended the December 2, 1997 meeting of the respondent Board if the agenda had included an item for action to approve the variance application of respondent Gallow. CT Page 6695
 9. It is found that there was no vote of two-thirds vote [sic] of the respondent Board to add as subsequent business an item for action to approve the variance application of respondent Gallow, and that the respondent Board took up the variance application following discussion of the minutes of November 5, 1997. It is also found that the four to one vote to grant the variance application represented more than the two-thirds that was necessary to bring the matter properly before the respondent Board.
He made the following conclusion of law:
 10. It is concluded that the respondents violated § 1-21 [C.]G.S. [now § 1-225] when, without first recording a two-thirds vote to do so, they took up a motion to approve the variance application of respondent Gallow (which is different business than a motion to correct minutes).
Mr. Leonhardt's decision further stated that he, "declines to hold the December 2, 1997 approval of the variance application of respondent Gallow to be null and void and also declines to assess criminal penalties against the respondents. While various ambiguities will inevitably result when a person applies to a board on which he himself sits, particularly in a small town context where numerous political and personal relationships may be at play, the Commission believes that the FOIA violation found at paragraph 10, above, standing alone, resulted from a good faith error. In such circumstances, the Commission believes it should neither overturn the processes of duly constituted municipal government nor assess civil penalties against the respondents."
He recommended to the Commission that it enter an order that "The respondent Board shall not take up any subsequent business not listed on its posted agenda without first recording a two-thirds vote to do so." He further recommended: "The Commission notes that the enforcement of a cease and desist order of the respondent Board is still pending in Superior Court and leaves it to this forum of general jurisdiction to sort through the relevant zoning law, as well as the implications of the commercial transactions between respondent Board members, which followed only a few months after the December 2, 1997 vote on respondent Gallow's variance application."
All the findings of fact and conclusion of law of its hearing officer were accepted by the FOIC, but the Commission refused to follow his CT Page 6696 penalty recommendations, specifically ordering, "1) The vote to approve the variance application of respondent Gallow taken at the December 2, 1997 meeting of the Plainfield Zoning Board of Appeals is hereby declared null and void." ZBA appeals that decision of the FOIC to this court.
The ZBA is clearly aggrieved by the decision and has standing to bring this appeal.
C.G.S. § 1-225 (a) (formerly § 1-21) provides that: "the agenda of the regular meetings of every public agency . . . shall be available to the public and shall be filed not less than 24 hours before the meetings to which they refer . . ." That sub-section further provides:
 "Upon the affirmative vote of two-thirds of the members of a public agency present and voting, any subsequent business not included in such filed agendas may be considered and acted upon at such meetings."
Section 1-206 (b)(1) [formerly § 1-21 (i)(b)(1)] provides that a person denied any rights conferred by the Freedom of Information Act may appeal therefrom to the Freedom of Information Commission. Section 1-206
(b)(2) provides "In any appeal to the Freedom of Information Commission under subdivision (1) of this subsection. . . . the commission may . . . order the agency to provide relief that the commission in its discretion believes appropriate to rectify the denial of any right conferred by the Freedom of Information Act. The commission may declare null and void any action taken at any meeting in which a person was denied the right to attend. . . ."
While the Commission did not make as a basis for its decision that the ZBA violated the agenda provisions of § 1-225, it did find that "the agenda posted for the December 2, 1997 meeting included an item to `review and act on minutes of November 5, 1997' meeting, but did not include an item for action to approve the variance application of respondent Gallow." There is ample evidence in the entire record (Samperis v. Inland Wetlands Agency, 226 Conn. 579, 590-91 (1993)) to confirm the finding of the FOIC that the notice of the agenda for the December ZBA meeting did not fairly and sufficiently apprise the public of the action to be taken on the variance. As stated in Cocivi v.Planning and Zoning Commission, 20 Conn. App. 705, 708 (1990), "A notice is proper only if it fairly and sufficiently apprises the public of the action proposed, making possible intelligent preparation for participation in the hearing." See also Koepke v. Zoning Board ofAppeals, 25 Conn. App. 611, 616 (1991).
The essential holding of the FOIC is that the ZBA "violated § 1-21
CT Page 6697 [now § 1-225] when, without first recording a two-thirds vote to do so, they took up a motion to approve the variance application of the respondent Gallow (which is different business than a motion to correct minutes)." In reaching that conclusion, the Commission also found "that the 4 to 1 vote to grant the variance application represented more than the two-thirds that was necessary to bring the matter properly before the respondent board."
The critical issue here is the meaning to be accorded to the following provision of § 1-225 (a): "Upon the affirmative vote of two-thirds, the members of a public agency present and voting any subsequent business not included in such filed agendas may be considered and acted upon at such meetings." The Commission interprets that statute to mean there mustfirst be an affirmative two-thirds vote to take up a matter not on the agenda before acting on the matter.
The ZBA takes the position that an. affirmative two-thirds vote on the substantive issue itself is sufficient to comply with the statute.
Our courts recognize the rule of according deference to the construction given the statute by an agency charged with its enforcement.Anderson v. Ludgin, 175 Conn. 545, 555 (1978). Deference is particularly appropriate when the issue is the application of general statutory language to a particular fact-bound controversy. Bridgeport Hospital v.Commission on Human Rights and Opportunities, 232 Conn. 91, 109 (1995). However, "it is for the courts, and not for the administrative agencies to expound and apply governing principles of law." Id. As stated in Boardof Education v. Freedom of Information Commission, 217 Conn. 153 (1991) "Under the UAPA, a trial court may reverse a decision of an administrative agency if that decision evinces an `error of law'. General Statutes § 4-183 (j)(4). The trial court may not defer to an incorrect decision of law by the agency." Interpretation of a statute is clearly a question of law. Connecticut Hospital Assn. v. Commission onHospitals and Health Care, 200 Conn. 133, 140 (1986).
In construing the Freedom of Information Act, regard must be had to its overall purpose. As stated in Wilson v. Freedom of InformationCommission, 181 Conn. 324, 328 (1980), "The Freedom of Information Act expresses a strong legislative policy in favor of open conduct of government and free public access to government record." See also Boardof Trustees v. Freedom of Information Commission, 181 Conn. 544, 550
(1980).
Section 1-225 (a) clearly provides that agendas of regular meetings of a public agency shall be filed not less than twenty-four hours before the meeting. The purpose of this requirement is that the public and CT Page 6698 interested parties be apprised of matters to be taken up at the meeting in order to properly prepare and be present to express their views.Koepke v. Zonning Board of Appeals, 25 Conn. App. 611, 617 (1991).
However, in order that agencies shall not be overly restricted by published agendas, § 1-225 provides that upon the affirmative vote of two-thirds of the members of an agency, a matter not on the agenda "may be considered and acted upon at such meeting." This gives some flexibility to agencies in the conduct of their business. For volunteer boards which meet usually on a monthly basis, this flexibility is justified and sometimes necessary.
The legislative history of the provision requiring a two-thirds vote to consider and act on a matter not on an agency's agenda is somewhat helpful. The provision was adopted in 1977. The bill was briefly debated in the Senate and then placed on the consent calendar and unanimously passed. In the House only Representative Tiffany commented about the subject provision, stating he believed the two-thirds vote of the members to add an item to the agenda "is an unreasonable restriction and I think that a simple majority should be able to adopt a measure on the agenda, especially if it happens to be an emergency meeting." House Proc. Pt. 16, Vol. 20, June 7, 1977, p. 6654.
However, in the public hearing before the Government Administration and Elections committee, FOIC submitted a statement explaining the reason for the provision as follows:
 "This amendment would provide that the agendas of the regular meetings of each public agency be available to the public when prepared and shall be posted not later than 24 hours before the meetings to which they refer. The amendment would not preclude any public agency from considering any other business not included in the posted agendas, if such business is raised subsequent to the posting of such agendas. We believe that this provision will permit greater public access to meetings regarding matters of concern, and prevent a simple majority of multi-member public agency from railroading such matters through without public knowledge. The amendment would also permit, however, public agencies needed flexibility in scheduling their business, while not misleading the public.
Jt. Standing Committee Hearings, Govt. Adm. And Elec. Committee, Part 2, March 3, 1977, p. 425. This court has the right to consider testimony given at legislative committee hearings. Murchison v. Civil ServiceCT Page 6699Commission, 234 Conn. 35, 46 (1995); Derwin v. State Employees RetirementCommission, 234 Conn. 411, 423 (1995).
Thus, the two-thirds vote requirement allows local boards some flexibility while assuring that deviating from the filed agenda only occurs in the rare instances when a super-majority of the members agree.
Whether an agency must first vote by a two-thirds majority to take up a matter, and then in a second vote to act upon it, or whether it can simply, in one vote, consider and act upon the measure directly by two-thirds vote seems to this court to dignify form over substance. The statute requires that there be a two-thirds vote to consider and act upon an item not on the agenda and that requirement is met when a two-thirds vote is rendered directly upon the issue itself without first having to determine whether or not to take up the matter. This should particularly be the interpretation given to the statute when applied to local boards composed of lay people and volunteers. In explaining why such boards we must be allowed some slack in the carrying out of their duties, the Supreme Court in Gagnon v. Inland Wetlands and Watercourse Commission,213 Conn. 604, 611 (1990), stated a cogent reason was "the public policy argument that a local land use body is composed of laymen whose procedural expertise may not always comply with the multitudinous statutory mandates under which they operate." See also Grimes v.Conservation Commission, 243 Conn. 266, 281 (1997).
Thus, this court concludes that the ZBA did comply with § 1-225 (a) by voting 4 to 1 to approve the application for variance, and the FOIC incorrectly nullified that action.
The appeal is sustained.
 Robert Satter Judge Trial Referee