[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION MOTION TO DISMISS
In this action, the plaintiffs seek a declaratory judgment and injunctive relief against the defendants in connection with a planned housing development in the Town of Simsbury. The plaintiffs are Riverbend Associates, Inc. (Riverbend) and Griffin Land and Nurseries, Inc. (Griffin). Riverbend is a wholly owned subsidiary of Griffin. The defendants are the Town of Simsbury (Simsbury) and the Simsbury Water Pollution Control Authority (WPCA).
Riverbend is the owner of a 363 acre parcel of land in the north end of Simsbury. Although the 363 acre parcel is zoned for single-family residential development on subdivided lots of at least 40,000 square feet or 80,000 square feet, it has been used for decades for commercial agriculture. In November, 1999, the plaintiffs and Fairfield 2000 Homes Corporation (Fairfield), a non-profit housing organization, applied to the land use commissions of Simsbury or several permits necessary to develop a 640 unit residential development (Meadowood). These land use applications were sought pursuant to General Statutes § 8-30g,[1]
the affordable housing statute, because the plaintiffs and Fairfield had agreed to preserve at least 25 percent of the homes for thirty years within the economic reach of low or moderate income households. The Meadowood plan proposed four types of homes: homes for low and moderate income families; detached homes built in clusters on common ownership lots; post-family homes for active adults or "empty nesters"; and traditional, luxury homes on subdivided lots. CT Page 5449
The WPCA is the agency established by Simsbury pursuant to General Statutes § 7-246 (a)[2] to exercise the powers granted by state law with respect to municipal sewerage systems. The WPCA has adopted a plan identifying areas in Simsbury where developments may be connected to Simsbury's sewer system and, therefore, may discharge sewage into the treatment plant operated by Simsbury. Simsbury's treatment plant is located adjacent to the Farmington River, where it discharges treated sewage. The WPCA allocates a specific sewage disposal capacity to individual parcels within the Town's sewer district of the 363 acres of the Meadowood property, 267 are within the Town's sewer service area. The WPCA has allocated a sewage disposal capacity of approximately 110,900 gallons per day to the 267 acres of Meadowood property within Simsbury's sewer service area.
The original Meadowood development plan filed in November, 1999, proposed 595 residential homes within Simsbury's sewer service district and forty-five homes outside the sewer district on subdivided lots with on-site septic systems. The homes within the sewer district would have required sewage disposal capacity of approximately 300,000 gallons per day. In order to provide sewage disposal capacity for the portion of the Meadowood plan within the sewer area, the plaintiffs applied to the WPCA, in conjunction with their land use permit applications, for permission to transfer to the Meadowood parcel 190,000 gallons of sewage disposal capacity from a 122 acre, industrial zoned parcel (industrial parcel) that is located one-half mile east of Meadowood and is owned by the plaintiffs. The WPCA previously had allocated approximately 382,000 gallons of disposal capacity to the industrial parcel. Additionally, the plaintiffs proposed a restrictive covenant limiting the industrial parcel to the disposal capacity remaining after the transfer. In the past, the WPCA has allowed sewer capacity transfers between separate properties as long as the parcels at issue discharge into the same interceptor. Meadowood and the industrial parcel discharge into the same interceptor line. On March 7, 2000, the WPCA denied the plaintiffs' transfer request, stating that the transfer would leave the industrial parcel without adequate capacity for industrial development and that the Meadowood plan would result in operational problems in the collection system and at the sewage treatment plant.
Thereafter, the plaintiffs reduced the Meadowland development plan to a total of 371 homes. The revised plan consisted of 269 homes connected to Simsbury's public sewer, utilizing the 110,900 gallons of disposal capacity available to the Meadowood parcel, and fifty-five homes within the sewer system area but located on subdivided lots and served by individual, on-site septic systems. The revised plan also proposed forty-seven homes located outside the sewer service area with on-site CT Page 5450 septic systems.
With respect to the 102 homes utilizing on-site septic systems in the revised plan, the plaintiffs applied to the Farmington Valley Health District (FVHD) in May, 2000, for approval of the septic systems. The department of health services (DOHS) has authority to regulate and issue permits for on-site subsurface sewage disposal systems for single family homes or to delegate that authority to other agencies. The FVHD is the agency designated by the DOHS to process applications in Simsbury and issue permits for on-site household septic systems with capacities of less than 5,000 gallons per day. The plaintiffs conducted soil tests under the FVHD's supervision on each proposed lot to demonstrate whether these systems could be developed consistent with the DOHS' regulations. On June 13, 2000, the FVHD issued a letter to Simsbury approving the soils on all but two of the 102 proposed lots as being capable of supporting on-site septic systems consistent with public health standards.
On May 23, 2000, the plaintiffs submitted their revised development plan to the WPCA, seeking approval of the proposed connection of the 269 homes to Simsbury's sewer system. The plaintiffs allege that, at a June 8, 2000 meeting, the members of the WPCA announced that they "had a `practice' of not permitting septic systems within the Town's sewer service area." (Complaint, ¶ 32.) The plaintiffs allege that, despite this "practice," there are currently several dozen residential homes with on-site septic systems within the sewer service area of Simsbury.
At a June 28, 2000 meeting, the WPCA voted to issue a letter, which was sent June 29, 2000, prohibiting the plaintiffs from installing the septic systems in the sewer district for several reasons. First, the WPCA noted its practice of requiring new construction units to be connected to available sewers. Second, the WPCA indicated that primary septic systems can fail, which results in residential homes being hooked up to sewer systems. The plaintiffs allege that as a result of its position regarding the on-site septic system units, the WPCA failed to act on the primary portion of the plaintiffs' application, that portion requesting approval to connect the 269 homes to the public sewer system. The plaintiffs contend that the WPCA continues to acknowledge that the 110,000 gallons allocated to this land would remain available for this purpose.
The plaintiffs allege that the WPCA's assertion of jurisdiction over, and its prohibition of, the construction of on-site septic systems within the sewer service district is ultra vires because neither state statutes, regulations nor local ordinances authorize water pollution control authorities to prohibit septic systems within sewer service areas. The plaintiffs also allege that the WPCA's actions regarding the CT Page 5451 on-site septic systems is preempted by state statutes and regulations, which delegate authority to regulate household septic systems to the DOHS and its designees, who have, in fact, approved all but two of the proposed septic systems. The plaintiffs allege further that the WPCA is not authorized to enforce the state building code, and alternatively, that the WPCA's actions violate the building code because the code permits septic systems. Finally, the plaintiffs allege that the defendants have violated General Statutes § 8-2,[3] which the plaintiffs contend requires municipalities to encourage housing development consistent with existing soil types.
The plaintiff's request the following relief: a declaratory judgment as to whether the defendants are empowered to prohibit the proposed construction on the Meadowood property of on-site household subsurface sewage disposal systems with a design flow of less than 5,000 gallons per day; a permanent injunction against the defendants prohibiting them from enforcing a policy or practice of banning the construction of residential homes with on-site subsurface sewage disposal systems that have otherwise been approved by the FVHD as complying with the state requirements for such systems; an order of notice of the nature of the declaratory and injunctive relief sought herein; and any other relief that the court deems appropriate.
Pending before the court is the defendants' motion to dismiss on the ground that the court lacks subject matter jurisdiction to hear this case because the plaintiffs have failed to exhaust their administrative remedies.
 I
"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Emphasis in original; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 544, 590 A.2d 914 (1991). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v. Ment, 244 Conn. 296, 308, 709 A.2d 1089 (1998). A motion to dismiss is the appropriate vehicle with which to challenge the court's subject matter jurisdiction. See Jolly, Inc. v. Zoning Board of Appeals, 237 Conn. 184, 192, 676 A.2d 831 (1996).
"It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter. . . . Exhaustion is CT Page 5452 required even in case where the agency's jurisdiction over the proposed activity has been challenged)" (Citations omitted; internal quotation marks omitted.) OG Industries, Inc. v. Planning Zoning Commission,232 Conn. 419, 425, 655 A.2d 1121 (1995). The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine . . . furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . Most important, a favorable outcome will render review by the court unnecessary [because] as the United States Supreme Court has noted: A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene. McKart v. United States, [395 U.S. 185, 195, 89 S.Ct. 1657, 23 L.Ed.2d 194
(1969)]." (Internal quotation marks omitted.) Johnson v. Statewide Grievance Committee, 248 Conn. 87, 95, 726 A.2d 1154 (1999). "Furthermore, [b]ecause the exhaustion doctrine implicates subject matter jurisdiction, [the court] must decide as a threshold matter whether the doctrine requires a dismissal of the plaintiffs' claim." (Internal quotation marks omitted.) Polymer Resources, Ltd. v. Keeney, 227 Conn. 545,557, 630 A.2d 1304 (1993).
 A
In support of their motion, the defendants first argue that the plaintiffs had the opportunity to request a hearing before the commissioner of the department of environmental protection (DEP) but failed to do so and, therefore, failed to exhaust their administrative remedies. According to the defendant, General Statutes §22a-430(f)[4] gives the commissioner the ability to delegate the authority to issue permits and approvals for household and small commercial disposal systems to either the WPCA or DOHS. The defendants maintain that in order to determine to which agency the commissioner had delegated that authority under § 22a-430(f), and in order to reconcile that delegation with General Statutes §§ 22a-430(g)[5] and7-246(b),[6] the plaintiffs should have appealed to the DEP pursuant to General Statutes § 22a-436.[7]
The plaintiffs argue that § 22a-430(f) is inapplicable because the plaintiffs did not apply to the WPCA for permits for the fifty-five septic systems. The plaintiffs contend that their application to connect to the sewer system was made pursuant to § 7-246, not § 22a-430(f). The plaintiffs also argue that § 22a-430(f) does not direct this case to the DEP because § 22a-430(g) vests the authority in the DOHS to establish and define categories of discharges for household and small CT Page 5453 commercial subsurface disposal systems. Lastly, the plaintiffs assert that the present action involves a request for a statutory interpretation regarding the powers delegated to a municipal agency and, thus, falls outside of the expertise and statutory authority of the DEP.
"The process of statutory interpretation involves a reasoned search for the intention of the legislature. . . . In other words, [the court seeks] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case. . . . In seeking to determine that meaning, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) State v. Quinet,253 Conn. 392, 413-14, 752 A.2d 490 (2000). The Supreme Court has held that "where a statute has established a procedure to redress a particular wrong a person must follow the specified remedy and may not institute a proceeding that might have been permissible in the absence of such a statutory procedure." (Internal quotation marks omitted.) Fish Unlimited v. Northeast Utilities Service Co., 254 Conn. 1, 12, 756 A.2d 262
(2000); see also Cannata v. Dept. of Environmental Protection,215 Conn. 616, 623, 577 A.2d 1017 (1990). "Where a statutory requirement of exhaustion is not explicit, courts are guided by [legislative] intent in determining whether application or the doctrine would be consistent with the statutory scheme. . . . Consequently, [t]he requirement of exhaustion may arise from explicit statutory language or from an administrative scheme providing for agency relief." (Citations omitted; internal quotation marks omitted.) Johnson v. Statewide Grievance Committee, supra, 248 Conn. 96-97. "When a particular statute authorizes an administrative agency to act in a particular situation it necessarily confers upon such agency authority to determine whether the situation is such as to authorize the agency to act — that is, to determine the coverage of the statute — and this question need not, and in fact cannot, be initially decided by a court." (Internal quotation marks omitted.) Polymer Resources, Ltd. v. Keeney, supra, 227 Conn. 558.
Section 22a-430(f) authorizes the commissioner to delegate the authority to establish categories of discharges for sewerage and disposal systems to any state agency or water pollution control authority. A disposal system is defined as "a system for disposing of or eliminating wastes, either by surface or underground methods. . . ." General Statutes § 22a-423. Section 22a-436 provides that and person aggrieved by an order denying an application pursuant to § 22a-430(f) first may request a hearing before the DEP. Once a hearing before the commissioner is held, any person aggrieved by that decision may appeal to the Superior Court pursuant to General Statutes § 22a-437.[8]
CT Page 5454
Section § 22a-430(g) authorizes the commissioner of DEP to delegate the authority to establish and define categories of discharges that constitute household and small commercial subsurface disposal systems and to issue permits and approvals to the commissioner of the DOHS. General Statutes § 19a-229[9] provides that any person aggrieved by an order made pursuant to § 22a-430(g) may appeal to the commissioner of the DOHS within forty-eight hours. See Pinchbeck v. Dept. of Environmental Protection, Superior Court, judicial district of Hartford, Docket No. 583410 (September 28, 1999, Teller, J.).
The legislative history of § 22a-430(g) clarifies that the DOHS has authority over subsurface septic system with capacities of 5,000 gal1ons a day or less. Senator Murphy explained that "what this Bill does is require the Commissioner of the Department of Environmental Protection to establish, by regulations, and regulate household and small commercial categories of water pollution discharges and he delegates his authority to issue the permits with the approval of these discharges, to the Commissioner of Health." 20 S. Proc., Pt. 5, 1977 Sess., p. 1995; see also Conn. Joint Standing Committee Hearings, Environment, 1977 Sess, p. 819-20. Although the plaintiffs argue that their application to the WPCA was make pursuant to § 7-246 and that it does not fall within §22a-430(f), the plaintiffs' complaint concedes that the "regulation and permitting of on-site subsurface sewage disposal systems for single-family homes is delegated by statute and regulation to the DEP and the Department of Health Services." (Complaint, ¶ 11.) Thus, the plaintiffs' claim that the denial of their permit does not fall within the purview of the DEP is inconsistent with a plain reading of their complaint. Although § 22a-430(g) specifically delegates authority over septic systems to the DOHS, in some instances, state and local agencies may have overlapping jurisdiction. See General Statutes §22a-2a(d);[10] Aaron v. Conservation Commission, 183 Conn. 532, 552,441 A.2d 30 (1981).
The plaintiffs rely on Aaron v. Conservation Commission, 178 Conn. 173,422 A.2d 290 (1979), for the proposition that there is an except on to the exhaustion of administrative remedies doctrine for jurisdictional questions. The plaintiffs' reliance on Aaron v. Conservation Commission, supra, 178 Conn. 173, is misplaced. In that case, the Supreme Court provided that "declaratory judgment proceedings are appropriate for determining jurisdictional issues or questions concerning the validity of the regulations of an administrative agency, while questions concerning the correctness of an agency's decision in a particular case or of the sufficiency of the evidence can properly be resolved only by appeal." Id., 178. Subsequent cases, however, have clarified the issue of jurisdictional challenges and the exhaustion of administrative remedies CT Page 5455 doctrine and, while not expressly overruling Aaron v. Conservation Commission, supra, 178 Conn. 173, have seemed to ignore the proposition that the plaintiffs rely on. In OG Industries, Inc. v. Planning 
Zoning Commission, supra, 232 Conn. 425, the Supreme Court provided that "[e]xhaustion is required even in cases where the agency's jurisdiction over the proposed activity has been challenged." (Internal quotation marks omitted.) Relying on federal precedent, the Supreme Court provided that "[t]he right to appeal a decision of an administrative agency exists only under statutory authority. . . . A plaintiff seeking a right to appeal under § 4-183 must exhaust all administrative remedies. It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the Superior Court will obtain jurisdiction to act in the matter." (Internal quotation marks omitted.) Cannata v. Dept. of Environmental Protection, supra,215 Conn. 622.
The plaintiff's claim to bring their declaratory judgment action pursuant to § 7-246, which outlines the powers of water pollution control authority boards but does not provide for recourse for violations.[11] "Under § 7-246, a municipal WPCA is empowered as part of its overall responsibility, to plan for the treatment and disposal of sewage within the municipality, to designate and delineate the boundaries of areas where sewers are to be avoided." (Internal quotation marks omitted.) Fairfield 2000 Homes v. Planning and Zoning Commission, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 578756 (March 19, 1999, Mottolese, J.). A WPCA is a separate municipal entity created pursuant to General § 7-246." Housing Authority v. Water Pollution Control Authority, Superior Court, judicial district of New London at Norwich, Docket No. 102447 (April 19, 1996, Teller, J.) (16 Conn.L.Rptr. 496, 496). "Section 7-246 (b) is permissive in nature. There is nothing mandatory in the statute." D'Amato v. Water Pollution Control Authority, Superior Court, judicial district of Ansonia-Milford at Milford, Docket No. 037123 (February 15, 1996, Curran, J.).
Section 7-246 does not authorize lawsuits for violations of the specific powers granted through its provisions to water pollution control authority boards. An appeal to the Superior Court from a decision of an administrative agency is a matter of legislative grace. Cannata v. Dept. of Environmental Protection, supra, 215 Conn. 622. Like the plaintiffs in Cannata, the plaintiffs in the present action only may seek an appeal to the Superior Court pursuant to General Statutes § 4-183(a)[12]
and, therefore, must exhaust all of their administrative remedies before they do so. Id.; see also Polymer Resource, Ltd. v. Keeney, supra,227 Conn. 558.
Although the legislative history of § 22a-430(g) indicates that the CT Page 5456 DOHS has authority over subsurface septic systems, the primary issue in this case is whether the WPCA's actions with respect to the plaintiffs' applications were ultra vires. More specifically, the issues are whether the WPCA had the authority to deny the plaintiffs' application to connect to the Simsbury sewer system because some of the planned homes within Simsbury's sewer service area would have on-site septic systems and whether the actions of the WPCA are preempted by § 22a-230(g). Determining whether the WPCA has exceeded its statutory authority may be the subject of an administrative appeal. Housing Authority v. Papandrea,222 Conn. 414, 424, 610 A.2d 637 (1992). In light of the general rule that an administrative agency must determine whether it has jurisdiction in a particular situation; Polymer Resource, Ltd. v. Keeney, supra,227 Conn. 558; and the requirement that administrative appeals be made pursuant to statutory authority; Cannata v. Dept. of Environmental Protection, supra, 215 Conn. 622; the DEP would be the proper agency, consistent with its powers under §§ 22a-2(g) and 22a-2a(d), to review the WPCA's conduct in the present action. Therefore, the court finds that the plaintiffs failed to exhaust their administrative remedies by not appealing to the DEP pursuant to § 22a-436 to determine the authority of the WPCA over subsurface sewerage systems in light of the potential jurisdictional overlap evident in §§ 22a-430(f), 22a-40(g) and 7-246(b).
 B
The defendants alternatively argue that the plaintiffs should have sought a declaratory ruling pursuant to General Statutes § 4-176[13]
from the DEP to determine whether the WPCA had the authority to require that residential homes constructed within Simsbury's sewer service areas must be connected to Simsbury's sewer system. The defendants contend that subsections (f) and (g) of § 22a-430 grant the DEP the authority over subsurface disposal systems but that those provisions are unclear as to which agencies the DEP may delegate that authority. The defendants maintain that since the WPCA and the DOHS obtain their authority through the DEP, the DEP is the appropriate agency to determine the scope of the WPCA's jurisdiction over septic systems. Furthermore, the defendants assert that an initial ruling by the DEP is appropriate because the plaintiffs' claim is essentially that the DEP did not delegate certain powers to the WPCA.
The plaintiffs argue that the WPCA denied the plaintiffs' permit pursuant to § 7-246 and that the DEP may not issue decisions on issues regarding municipal powers. The plaintiffs cite to the DEP's Rules of Practice and contend that the declaratory relief suggested by the defendants is only permissible if it involves "a statute, regulation or final decision of the [DEP]" and, therefore, does not apply. (Plaintiffs' Memorandum, p. 13.) The plaintiffs further assert that Practice Book CT Page 5457 § 17-55[14] provides that declaratory rulings from the Superior Court are preferable to other potentially available remedies and that they are the best mechanism for resolving issues relating to the powers of a municipal agency against claims of ultra vires and preemption.
"Section 4-176(a) provides that `[a]ny person may petition an agency . . . for a declaratory ruling as to the validity of any regulation, or the applicability to specified circumstances of a provision of the general statutes, a regulation, or a final decision on a matter within the jurisdiction of the agency.'" Housing Authority v. Papandrea, supra,222 Conn. 421. "Under General Statutes § 4-166(3), final decision means (A) the agency determination in a contested case, (B) a declaratory ruling issued by an agency pursuant to section 4-176 or (C) an agency decision made after reconsideration." (Internal quotation marks omitted.) Derwin v. State Employees Retirement Commission, 234 Conn. 411, 418,661 A.2d 1025 (1995). Although "General Statutes § 4-175 (a)[15]
. . . sets forth the circumstances under which a party aggrieved by a provision of the general statutes, a regulation or a final decision of an agency may directly seek a declaratory judgment in the Superior Court"; Housing Authority v. Papandrea, supra, 222 Conn. 421; this statute does not apply to the plaintiffs because they have failed to request a declaratory ruling from the DEP. "The appealability of an agency decision is governed by § 4-183(a)."[16] Derwin v. State Employees Retirement Commission, supra, 234 Conn. 418. The exhaustion doctrine requires that the procedures in § 4-176(a) be exhausted prior to a plaintiff bringing a petition before the Superior Court if there is in place a mechanism for adequate judicial review. Housing Authority v. Papandrea, supra, 222 Conn. 421-22 n. 6, 432-33; see also Polymer Resources Ltd. v. Keeney, supra, 227 Conn. 558; Haddam v. LaPoint,42 Conn. App. 631, 640, 680 A.2d 1010 (1996).
Although the plaintiffs argue that Practice Book § 17-55 provides that a declaratory ruling is preferable over other potential remedies, the plaintiffs concede that" [a] declaratory judgment may not be used to circumvent an available administrative remedy." (Plaintiffs' Memorandum, p. 6.) Under the circumstances, § 4-176 provides an adequate remedy for the plaintiffs, who are contesting a final decision made on a matter within the jurisdiction of an agency, i.e., whether the WPCA could deny the plaintiffs' permit to connect to the Simsbury sewerage system based on the existence of fifty-five homes within the sewerage system area that would have on-site septic systems. The DEP is the appropriate body to determine whether the actions of the WPCA were within its authority. See Polymer Resources, Ltd. v. Keeney, supra, 227 Conn. 557. The plaintiffs should have sought a declaratory ruling pursuant to § 4-176 from the DEP to determine whether the WPCA had jurisdiction to require that residential homes constructed in Simsbury's sewer service area be CT Page 5458 connected to Simsbury's sewers. By not doing so, the plaintiffs have failed to exhaust their administrative remedies.[17]
 II
Although the court holds for the reasons discussed in Part I of this opinion that the plaintiffs have failed to exhaust their available administrative remedies pursuant to § 22a-436 and § 4-176, and that this basis alone is sufficient to dismiss the plaintiffs' complaint, the court nevertheless will briefly address the remaining arguments of the parties.
 A
The defendants additionally argue that the plaintiffs failed to allege that they will suffer substantial harm if they are required to exhaust their administrative remedies and, therefore, do not fall within any exceptions to the exhaustion doctrine. The plaintiffs argue that this issue should properly be brought in a motion to strike, rather than in a motion to dismiss. The plaintiffs also argue that even if they brought the case before the DEP for a declaratory ruling, the plaintiffs would still have to seek relief from the courts because the DEP could not rule on the issue of preemption or issue an injunction against the WPCA's future interference.
"Like all other judicial doctrines, there are exception~ to the rule of exhaustion; however, we have recognized such exceptions only infrequently and only for narrowly defined purposes." (Internal quotation marks omitted.) Cannata v. Dept. of Environmental Protection, supra,215 Conn. 628. "Such exceptions include where the available remedy is inadequate or futile . . . or where local procedures cannot effectively, conveniently or directly determine whether the plaintiff is entitled to the relief claimed." (Citation omitted; internal quotation marks omitted.) OG Industries, Inc. v. Planning Zoning Commission, supra,232 Conn. 426. "An administrative remedy is futile or inadequate if the agency is without the authority to grant the requested relief." Cannata v. Dept. of Environmental Protection, supra, 215 Conn. 628. Additional exceptions to the exhaustion doctrine include instances in which "the procedures followed by the administrative agency are constitutionally infirm . . . or injunctive relief from an agency decision is necessary to prevent immediate and irreparable harm." (Citation omitted.) Polymer Resources, Ltd. v. Keeney, supra, 227 Conn. 561.
The plaintiffs do not fall within any exceptions to the exhaustion doctrine. The DEP has the authority to interpret the powers of the WPCA through either § 22a-430(f) or a declaratory ruling under § 4-176. CT Page 5459 Furthermore, "a claim for injunctive relief does not negate the requirement that the complaining party exhaust administrative remedies"; Housing Authority v. Papandrea, supra, 222 Conn. 424; and, therefore, the plaintiff's argument that the DEP cannot provide the appropriate relief is without merit. Because the exhaustion doctrine implicates the court's subject matter jurisdiction; Polymer Resources, Ltd. v. Keeny, supra,227 Conn. 557; the plaintiffs' argument that the issue of whether they must exhaust their administrative remedies should be brought in a motion to strike rather than in a motion to dismiss is without merit.
 B
The defendants finally argue that the plaintiffs' failure to exhaust their administrative remedies available pursuant to General Statutes § 7-250,[18] § 7-255[19] and § 7-257[20] also requires that the court dismiss the present action. The court agrees with the plaintiffs that these statutes are facially inapplicable to the facts of this case.
Section 7-250 provides an aggrieved party with the right to appeal an assessment rendered by the WPCA. This section is inapplicable to the present case because the defendants denied sewer access to the plaintiffs and did not impose a sewer assessment.
Section 7-255(a) is specific in providing for an appeal to the Superior Court from the imposition of charges for connecting a building to a municipal sewer system. "General Statutes § 7-255 provides that a water pollution control authority may establish and revise fair and reasonable charges for connection with and for the use of a sewerage. The statute makes the owners of a property liable for the payment of the use charge levied." (Internal quotation marks omitted.) Kaye v. West Haven, Superior Court, judicial district of New Haven at New Haven, Docket No. 382061 (April 18, 1997, Hodgson, J.). In the present case, the WPCA never imposed a connection charge because it denied the plaintiffs' application to connect the homes proposed by the Meadowood plan to Simsbury's sewer system. Thus, section 7-255 is inapplicable to the present case because the plaintiffs have not been charged for connecting to a sewer system.
Lastly, the defendants argue that the right to appeal a decision to deny connection to the sewer system is implicitly included in t e right to appeal an order to connect and, therefore, the plaintiffs failure to appeal this decision amounts to the plaintiffs' failure to exhaust an administrative remedy pursuant to § 7-257. The court agrees, however, with the plaintiffs that § 7-257 is inapplicable to the facts of this case. The WPCA did not issue an order to the plaintiffs to connect to the sewer system but rather denied them permission to install CT Page 5460 on-site septic systems in the sewer district and, as the plaintiffs allege, failed to act on the request to connect the 269 homes to the public sewer system. The court disagrees that the statutory language § 7-257 clearly referring to an "order . . . to connect" can be stretched to encompass the precise actions of the WPCA alleged in this case regarding the on-site septic systems. For this reason, the defendants' argument that the plaintiffs were obligated to follow the appellate remedy prescribed by § 7-257 is without merit.
 CONCLUSION
Based on the foregoing, since the plaintiffs have failed to exhaust their administrative remedies and do not fall within any of the exceptions to the exhaustion of remedies doctrine, the court lacks subject matter jurisdiction. The defendants' motion to dismiss the plaintiffs' complaint is hereby granted.
Peck, J.